**Richard W. GREEN and Nancy L. Green, Plaintiffs-Appellees,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Defendant-Appellant.**

No. 80–3199.

United States Court of Appeals,
Ninth Circuit.

Argued Nov. 2, 1981.

Submitted Nov. 9, 1981.

Decided Feb. 4, 1982.

I. Franklin Hunsaker, III, Portland, Or., argued, for defendant-appellant; Douglas G. Houser, Portland, Or., on brief.

J. Michael Alexander, Brown, Burt, Swanson & Lathen, P. C., Salem, Or., for plaintiffs-appellees.

Before CHOY * and GOODWIN, Circuit Judges, and PRICE,** District Judge.

GOODWIN, Circuit Judge.

A jury awarded the Greens $50,000 general damages and $250,000 punitive damages in a diversity action against State Farm arising out of the insurance company's conduct in dealing with the Greens after they had filed a claim for a fire loss. The appeal presents a number of questions that are controlled by Oregon law.

A barn, which was insured by both State Farm and Travelers, burned under circumstances that suggested the fire had been set. Green told the fire marshal that he had had trouble in the past with two juveniles who had committed acts of vandalism against his property. He reported the possibility of double coverage to the fire marshal and later to State Farm with whom he had insured the barn for 20 years. Green offered to produce the Travelers policy for the State Farm adjuster. The adjuster did not inquire further but reported the double coverage to the state police.

The police suggested that a possible criminal indictment against Green for arson would be aided by deposing him. Assuring Green that the information gathered would be used in confidence and only for the purpose of determining coverage, State Farm took his sworn statement. Two days later State Farm's attorney delivered a copy of the statement to a state police officer who came to his office. Information from the sworn statement was also used, without Green's permission, in a legal action in the state courts which is unrelated to this case. The state policeman completed his investigation and concluded that insufficient evidence existed to charge Green with arson.

Although State Farm knew that the state police had abandoned the investigation, the State Farm adjuster identified himself as a state policeman and questioned Green's neighbors about the fire, implying that Green had set it.

When Green went to State Farm's office to get proof of loss forms, the adjuster confronted him and stated that if he pressed his claim State Farm would have him charged with arson. The adjuster had previously acknowledged in a memo to his supervisor that an arson case could not be made against the insured.

After filing his proof of loss, Green was summoned before a Grand Jury that was investigating a possible charge of arson. The Grand Jury refused to indict.

The Greens eventually collected on the State Farm policy and brought this action against the insurance company for "outrageous conduct," alleging severe emotional distress. State Farm argues on appeal that its behavior was not outrageous and that punitive damages are precluded by the United States and Oregon Constitutions, by Oregon statute, and by public policy.

The tort of outrageous conduct has been recognized in Oregon by *Turman v. Central Billing Bureau, Inc.*, 279 Or. 443, 568 P.2d 1382 (1977); and *Rockhill v. Pollard*, 259 Or. 54, 485 P.2d 28 (1971). Each case cites 1 Restatement of Torts 2d, § 46, to define the tort. Section 46 reads:

---

* The Honorable Herbert Y. C. Choy was chosen by lot to replace The Honorable John F. Kilkenny who recused himself at argument.

** The Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

"(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

"(b) to any other person who is present at the time, if such distress results in bodily harm."

■ State Farm characterizes its conduct as reasonable behavior for an insurer investigating a claim. A carefully instructed jury decided otherwise, and the evidence fully supports that conclusion.

■ State Farm argues next that it was denied its Fourteenth Amendment due process rights because the standard for awarding punitive damages is not fixed and because a "preponderance of the evidence" burden of proof was used. These arguments have no support in Oregon law and border upon the frivolous.

In *Wheeler v. Green*, 286 Or. 99, 593 P.2d 777 (1979), the Oregon Supreme Court held that the right of free expression was sufficiently important under the Oregon Constitution to preclude a punitive damages award for defamation. State Farm argues that plaintiff's claim here is similar to a claim for defamation and therefore punitive damages should not be allowed. The analogy between free speech and State Farm's abusive and deceptive behavior is unconvincing. *See Hall v. May Department Stores Co.*, 292 Or. 131, 637 P.2d 126 (1981).

■ State Farm next argues that Or. Rev.Stat. § 731.988,[1] as interpreted in *Farris v. U. S. Fidelity and Guaranty Co.*, 284 Or. 453, 587 P.2d 1015 (1979), precludes punitive damages in a civil action against an insurance company. The court in *Farris*, however, is careful to distinguish between a contract action and one in tort. *Farris* disallows punitive damages because the action "could only have been a breach of contract, and, in cases of breach, the law is clear that no recovery for mental distress because of threat of pecuniary loss is recoverable." *Farris*, 587 P.2d at 1021. The instant action is one in tort; therefore, punitive damages are not forbidden under *Farris*. *See Wolf v. Nordstrom, Inc.*, 291 Or. 828, 637 P.2d 1280 (1981).

■ State Farm also asserts that *Farris* and *Santilli v. State Farm Life Insurance Co.*, 278 Or. 53, 562 P.2d 965 (1977), show "an unwillingness or reluctance" to recognize the tort of outrageous conduct in first-party insurance transactions. Neither *Farris* nor *Santilli*, however, mentions either tort or outrageous conduct. *Farris* involved a breach of contract claim and *Santilli* dealt with bad faith failure to pay a claim. Oregon law is not "reluctant" to recognize the tort of outrageous conduct when the facts of the case so indicate, whether or not the defendant is an insurance company.

---

1. Or.Rev.Stat. § 731.988 reads in part:

"(1) Any person who violates any provision of the Insurance Code, any lawful rule or final order of the commissioner of any final judgment or decree made by any court upon application of the commissioner, shall forfeit and pay to the General Fund of the State Treasury a civil penalty in an amount determined by the commissioner of not more than $2,000 for each offense, or $10,000 in the aggregate for all such offenses within any three-month period. In the case of individual agents or adjusters, the civil penalty shall be not more than $200 for each offense or $1,000 in the aggregate for all such offenses within any three-month period. Each violation shall be deemed a separate offense.

"(2) In addition to the civil penalty set forth in subsection (1) of this section, any person who violates any provision of the Insurance Code, any lawful rule or final order of the commissioner or any final judgment or decree made by any court upon application of the commissioner, may be required to forfeit and pay to the General Fund of the State Treasury a civil penalty in an amount determined by the commissioner but not to exceed the amount by which such person profited in any transaction which violates any such provision, rule, order, judgment or decree."

State Farm resorts to a number of policy arguments against the punitive damage award. If the behavior of a large insurance company is affected by the unfavorable publicity accompanying a large punitive award, public policy would favor the award.

 Also, the argument that punitive awards will have a "disastrous" economic effect on the industry and therefore on the rate-paying public, must be balanced against the public interest in motivating insurers to deal fairly. If an insurance company can act with impunity and be liable in any event only for the money it originally owed the policyholder, it will have a financial incentive to resist payment in as outrageous a manner as possible. State Farm can avoid the adverse economic effect of this kind of case by more careful selection and supervision of its adjusters.

Affirmed.