**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Subhash MADAN and Shobhana Madan, Defendants.**

**No. CV 94–4414–JCD.**

United States District Court, C.D. California.

Feb. 14, 1995.

**375**

Melody S. Mosley, Berger Kahn Shafton Moss Figler Simon & Gladstone, Irvine, CA, and Peter H. Klee, and Charles A. Danaher, Luce Forward Hamilton & Scripps, San Diego, CA, for Allstate Ins. Co.

Grace A. Carter, Paul Hastings Janofsky & Walker, Los Angeles, CA, for Subhash and Shobhana Madan.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIES, District Judge.

On January 23, 1995, Plaintiff's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, came on before the Court for hearing. Having considered the parties' written submissions, and the oral argument of counsel, the Court hereby GRANTS Plaintiff's Motion for Partial Summary Judgment on the Defendants' and Counterclaimants' bad faith and intentional infliction of emotional distress claims.

# I.

## FACTS

### A. Procedural History

On June 30, 1994, Plaintiff Allstate Insurance Company filed a Complaint for declaratory relief against Defendants Subhash Madan and Shobhana Madan (collectively, the "Madans"). Allstate seeks to determine its obligation under a homeowners insurance policy. Allstate is an Illinois corporation with its principal place of business in Illinois, and the Madans are citizens of California. The Court has diversity jurisdiction.

On August 3, 1994, the Madans filed an answer and counterclaim. The Madans assert that Allstate representatives assured them the claim would be paid, and discouraged the Madans from retaining a public adjuster. In the course of investigating the claim, Allstate discovered that the cost of rebuilding and replacing the home would exceed $6 Million. According to the Madans, Allstate sought to avoid or delay payment of the claim.

The counterclaim alleges claims for (1) declaratory relief, in which the Madans seek a declaration that Allstate is obligated to indemnify and pay in full all losses sustained by the Madans; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) intentional infliction of emotional distress; and (5) injunctive relief, in which the Madans request the Court to order Allstate to pay the full amount of outstanding mortgages on the residence. The Madans seek to recover punitive damages on the third and fourth claims.

### B. Underlying Events

In 1981, Allstate issued a Deluxe Homeowners Policy, number 004 183123, to the Madans. Said policy provides a variety of coverages. It insures the Madans's residence premises at 3060 Doyne Road, Pasadena, California. The policy provides coverage for direct loss caused by fire. Earthquake coverage is excluded. The policy was renewed yearly and was effective from August 26, 1993 until cancelled or terminated. There is no question that at the time of the events described herein the policy was in effect. The policy does not cover bodily injury or property damage resulting from an act or omission intended or expected to cause injury or property damage. Policy, Section II, at 23.

In the early morning hours of October 27, 1993, a brush fire started in the hills above Eaton Canyon Park in the Pasadena–Altadena area of Los Angeles County. Santa Ana winds spread the fire to surrounding hillsides and mountains. The fire burned in residential neighborhoods. Many persons were evacuated, and over 120 homes in Pasadena and Altadena were destroyed.

The Madans' premises consisted of their residence and a number of rented apartments. On the morning of the brush fire, the premises were destroyed by fire. It was the only residence on Doyne Street so destroyed. In the Kinneloa Mesa community where the premises are located, over 30 homes were damaged or destroyed. The community is less than one square mile in area.

On the same day, the Madans filed a claim under the policy for damage to the structure, damage to personal property, and additional living expenses. Allstate did not contest coverage for living expenses, and paid them. Allstate retained Michael Whedon, a licensed fire investigator, to investigate the fire at the insured premises and provide an opinion as to the cause and origin of the fire. Whedon conducted the first site inspection on November 12, 1993.

On or about January 10, 1994, Whedon submitted a report of his findings to Allstate. The report included the following information. The burn patterns on the remains of the exterior walls indicated that the fire originated in the residence. The land surrounding the residence was covered with dried grass and other flammable vegetation. The vegetation had not burned. Bushes and trees adjacent to the residence were burned on the sides facing the structure but were not burned on the sides facing away from the structure. Mr. Whedon viewed a videotape taken by Sheriffs deputies from the Altadena station on the morning of the fire. The videotape showed that the interior of the first

floor of the structure was burning. The second floor and roof were not burning at the time the deputies videotaped the premises.

The Whedon Report further stated that a 55–gallon barrel containing kerosene was found in the storage room at the north end of the west wing of the structure. The barrel had not exploded, but the top was bulged upward due to increased pressure from the heat of the fire. A small amount of kerosene was still inside the hand pump attached to the barrel. Mr. Whedon employed a Master Canine Accelerant Detection Team. A dog detected flammable and combustible liquid residues in the interior of the structure. The Madans stated that the only potentially flammable liquids kept in the residence were cleaning products and furniture polishes. The dog was not trained to detect such household products.

Also, two Los Angeles County Fire Department investigators inspected the insured premises. The investigators were in the area during the brush fire, and observed the wind conditions and fire behavior. They consulted with Whedon, and opined that the fire at 3060 Doyne Road was not caused by the Altadena wildfire. Mr. Whedon considered all of this information and concluded that the fire was intentionally set. He expressed this opinion in the report.

Allstate retained Barker Davie, a fire cause and origin expert, to conduct a further investigation. Mr. Davie reviewed the information provided by Allstate, including the Whedon Report and the Sheriff's Department videotape. Mr. Davie opined that the burn patterns found on the roof and walls of the residence were not consistent with a fire caused by embers from a wildfire. From the videotape he determined that the fire in the structure burned rapidly. Based on the size of the fire, Mr. Davie concluded that the fire burned rapidly because a large quantity of accelerant had been used.

Not all of the evidence suggests the fire on the premises was intentionally set. David Boucher is a captain with the Los Angeles County Fire Department. He is stationed at Fire Station 66, less than a mile from the insured premises. He asserts that between 8:15 and 8:30 on the morning of the fire, Mr. Madan arrived at Fire Station 66. Madan informed Captain Boucher that the grounds of his property were on fire. Captain Boucher and Battalion Chief Joseph Graham drove to the Madans' property. They observed that the courtyard grass was smoldering. There was no sign of fire inside the main house or the other buildings. When he left, the residence was not on fire. Captain Boucher concluded that embers carried by the wind could have landed on the premises and started a fire in the interior of the structure.

The Madans retained David A. Lowe, a fire cause and origin expert. He considered all available information and concluded that the Altadena wildfire "is the most obvious source for the fire" at the premises, and "one which cannot be eliminated."

Mr. Lowe evaluated the results of laboratory tests performed on debris samples removed from the premises. Truesdail Laboratories analyzed the samples for kerosene and gasoline. It found no detectable levels of flammable liquids or accelerants. Joe Bramblett, the Truesdail Laboratories Manager who prepared the report, later testified that one or two samples contained benzene, toluene, and xylene. Said compounds are accelerants. Approximately five months later, Armstrong Forensic Laboratory conducted a second analysis. It found "positive" readings for accelerants. Mr. Lowe concluded that the tests were "inconclusive."

Based on the information in Mr. Whedon's report, and other evidence obtained in the investigation, Allstate has taken the position that there is no coverage under the policy. The evidence resulting from the investigation may support a conclusion the fire was the result of an intentional act. It seeks such a determination by its declaratory relief claim.

On September 27, 1994, Allstate issued a draft in the sum of $457,762.40 to the Madans, the lienholders named on the insurance policy, the public adjustors retained on behalf of the Madans, and the Madans' attorneys. Allstate did so without waiving the terms and conditions of the insurance policy, or any of its rights and defenses which are the subject of the action herein.

## II.

### DISCUSSION

Allstate contends that it is entitled to summary judgment because the Madans did not cooperate in the investigation. In the alternative, Allstate contends it is entitled to partial summary judgment on the Madans' counterclaims for bad faith and intentional infliction of emotional distress. Allstate further requests the Court to find as a matter of law that the Madans are not entitled to punitive damages.

### A. Summary Judgment Standard

The Federal Rules of Civil Procedure provide for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court clarified the standard for summary judgment in three important cases. See Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electrical Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. Whether a fact is material is determined by looking to the governing substantive law; a fact is material if it may affect the outcome of the suit. Id. at 248, 106 S.Ct. at 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. See Celotex, 477 U.S. at 325, 106 S.Ct. at 2553–54; see also Schwarzer, Tashima &

Wagstaffe, Federal Civil Procedure Before Trial §§ 14:123–141 (1993).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e). Summary judgment will be entered against the non-moving party, when appropriate, if that party does not present these specific facts. Id.

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513–14 (citing Adickes v. S.H. Kress and Company, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient. Id., 477 U.S. at 252, 106 S.Ct. at 2512. As the Court explained in Matsushita, 475 U.S. at 586–87, 106 S.Ct. at 1356:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

However, an alleged "genuine issue" will not defeat summary judgment where the factual context makes the nonmovant's allegations implausible. See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Consequently, where the factual context makes the non-movant's claim implausible, the non-movant "must come forward with more persuasive evidence to support their claim than would otherwise be necessary" to show that there is a genuine issue for trial. Id.

Rule 56 of the Federal Rules of Civil Procedure allow a court to grant summary adjudication on part of a claim or defense. See

Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial §§ 14:33–47 (1993) (discussing Fed.R.Civ.P. Rule 56(a)–(d)). This procedure is commonly known as "partial summary judgment" though this is a misnomer because remaining claim and defenses, or parts of claims and defenses, must still be tried before judgment is entered. *Id.* at § 14:34. There is some question as to the extent to which courts may grant and parties may seek summary adjudication on elements of a claim or defense. *Id.* at §§ 14:36–46. However, the Central District of California, by Local Rule 7.14.4, liberally allows motions for the adjudication of particular facts and issues under Fed.R.Civ.P. Rule 56(d).

### B. *Failure to Cooperate in Investigation*

Allstate contends that it is entitled to summary judgment because the Madans did not voluntarily submit to an examination under oath or produce financial documents. Allstate's investigation was hindered because the Madans delayed testifying under oath, and refused to produce requested documents, including bank records and personal tax returns. Said documents are relevant to motive. Mosley Decl., paras. 13–14. In the alternative, Allstate argues that the Madans' failure to cooperate entitles it to partial summary judgment on the tort claims in the counterclaim.

■■ The policy provides, in relevant part, that:

In the event of a loss to any property that may be covered by this policy, you must:

.    .    .    .    .

(d) give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine ...

(f) as often as we reasonably require:

.    .    .    .    .

(2) submit to examinations under oath and sign a transcript of same.

Allstate Deluxe Homeowners Policy, Section I Conditions, ¶ 3 at 17; Exh. 43 to Plaintiff's Motion. Compliance with these provisions is a condition precedent to the insured's ability to recover under the policy. *West v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 350 (9th Cir.1989).

The Madans testified under oath on four separate occasions. During the examinations, they answered questions relating to the contents of the residence, financial condition, family, other real property, and the October 27, 1993 fire. S.K. Madan Decl., ¶ 34.

Allstate's coverage attorney had difficulty concluding the examinations. The Madans cancelled examination sessions or refused to testify several times. They did not produce financial information relevant to the testimony despite numerous written requests by Allstate's coverage attorney. Mosley Decl., paras. 3–8. The Madans did not produce a list of the contents lost in the fire, and refused to reveal information relating to loan obligations and the purchase price of their residence.

While the Madans assert that the requested documents were destroyed in the fire, Shobhana Madan Decl., ¶ 23, they refused to provide Allstate authorizations to acquire the documents from third parties. Mosley Decl. ¶ 13. Despite numerous requests, certain financial documents were never produced.

The Court finds that the Madans' pattern of non-cooperation is not, by itself, reason to grant summary judgment in favor of Allstate. *See Wood v. Allstate Ins. Co.*, 21 F.3d 741, 747 (7th Cir.1994). It is, however, evidence that Allstate conducted a reasonable investigation, and had reason to suspect that the fire had been intentionally set.

### C. *Genuine Issue as to Allstate's Coverage Obligation*

Allstate asserts that as a matter of law it cannot be liable for bad faith because a "genuine issue" exists as to its coverage obligation.

■■ An insurer is liable for breach of the implied covenant of good faith and fair dealing if it acted unreasonably in denying coverage. *Lunsford v. American Guarantee & Liability Insurance*, 18 F.3d 653, 656 (9th Cir.1994). The insurer is obligated to give the interests of the insured at least as much consideration as it gives its own interests.

*Othman v. Globe Indemnity Co.,* 759 F.2d 1458, 1464 (9th Cir.1985).

A court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability. *Lunsford,* 18 F.3d at 656; *Franceschi v. American Motorists Ins. Co.,* 852 F.2d 1217, 1220 (9th Cir.1988). Once the insurer determines that a genuine dispute over coverage exists, it is under no further duty to investigate the claim. If the insurance company's conclusion is not so unreasonable as to be a mere pretext for further investigation, the insurer is not liable for bad faith based on its conduct in the investigation. *Brinderson–Newberg v. Pacific Erectors,* 971 F.2d 272, 283 (9th Cir. 1992).

Allstate contends that the report prepared by Michael Whedon, and the conclusions reached by three other cause and origin experts, established the existence of a genuine issue of whether the fire was intentionally set. The Court agrees. Allstate did not act in bad faith, and is entitled to summary judgment on the Madans' bad faith claim.

There is little doubt that Allstate investigators discovered information establishing a genuine issue of liability under the policy. The Court need not reiterate all such evidence here. The following is a sample of the evidence discovered by investigators and reviewed by Allstate.

Whedon inspected the property, viewed videotapes of the fire, interviewed neighbors and tenants, interviewed fire department personnel who were present at the scene of the fire, used a dog trained to detect accelerants, sent debris samples to two separate laboratories for analysis, and interviewed the Madans. *See generally,* Whedon Report at Exh. 7. Whedon concluded that "[a]ll of the circumstances and the physical evidence indicates that the fire was intentionally set." *Id.* at 30.

Whedon obtained opinions from Captain Bill Franklin and Inspector David Westfield, Los Angeles Fire Department investigators. They inspected the property and considered whether the fire on the premises was caused by the Altadena wildfire. Franklin and Westfield Decls. ¶ 3. The two investigators were in the area during the Altadena wildfire. Based on their observation of the premises, the investigators concluded that the fire at Madans' premises was not caused by the wildfire. *Id.* at paras. 4–5.

Allstate retained Barker Davie, a well-known cause and origin expert. Mr. Davie reviewed the information gathered by Allstate investigators. He concluded that it was unlikely that a burning ember from the wildfire started the fire on the premises. The videotape taken during the fire shows that the structure burned rapidly. Based on the nature of the roof and walls Mr. Davie opined that a large quantity of accelerant was used to spread the fire. Davie Depo. at 60–61. Tolene and xylene are accelerants commonly detected in debris recovered from arson fires. These substances were detected in samples taken from the Madans' residence. Armstrong Forensic Laboratory Report; Bramblett Depo. at 87–88. In an examination under oath, Mr. Madan stated that he could recall no flammable substances kept in the residence. Mr. Madan EUO at 59.

Allstate discovered evidence that the Madans were experiencing financial hardship. The Madans owned at least five properties that were in foreclosure. One of the companies owned by the Madans had declared bankruptcy and owed $78,000 in state taxes. Exh. 13 to Allstate Motion. Tenants informed Allstate that the Madans did not maintain the premises, and that the residence had been severely damaged in an earthquake. Allstate viewed this evidence as a motive to set the fire.

In sum, the Court finds that Allstate discovered evidence sufficient to find a genuine issue of liability under the policy. The Court makes no finding as to whether the fire that burned the insured was intentionally set. As a matter of law, however, Allstate did not act unreasonably in investigating the claim. Nor did Allstate act in bad faith by withholding payment of the claim and seeking declaratory relief.

D. *The Investigation Was Not Conducted In Bad Faith*

The Madans contend that the existence of a "genuine issue" of liability under

the policy is not the relevant issue. Allstate conducted the investigation improperly. Specifically, the Madans allege that Allstate acted in bad faith by, among other things, denying coverage, engaging in a biased investigation, ignoring exculpatory evidence, and hiding material information from the Madans. Opp. at 16–24 & n. 6. The Court finds that the Madans have not shown that Allstate conducted an improper and biased investigation.

### 1. *Exculpatory Evidence*

The Madans assert that under *Egan v. Mutual of Omaha Ins Co.*, 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (1979), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 an insurer breaches the implied covenant of good faith by conducting a biased investigation and failing to consider exculpatory evidence. Madans' Opp. at 16, 21. However, the insurer in *Egan* denied the claim without a thorough investigation and without a good faith reason to believe that it was not obligated to pay the claim. *Egan* is inapposite when an insurer has good reason to dispute its coverage obligation. *Brinderson–Newberg*, 971 F.2d at 283.

■■ An insurer is liable for bad faith if it disregards evidence supporting coverage. *Betts v. Allstate Ins. Co.*, 154 Cal.App.3d 688, 702, 201 Cal.Rptr. 528, 539 (1984). The Madans contend that Allstate ignored the opinions of key witnesses who assert Altadena wildfire caused the fire on the insured premises.

Sheriff's Department Deputies Rawson and Soehnel videotaped the premises on the morning of the fire. The Madans left the premises prior to their arrival. Deputies Rawson and Soehnel testified that the home was "fully involved" in flames, that high winds and burning embers were starting "spot" fires throughout the area, and they saw no evidence of arson (i.e. there were no unusual odors consistent with a chemical fire). The deputies do not believe that the fire was caused by any source other than the Altadena wildfire. Rawson Depo., 17–19, 32–33; Soehnel Depo., 26–27, 32–33.

Deputies Rawson and Soehnel are not cause and origin experts. Rawson Depo. at 54. The Madans have not shown that they expressed an opinion of the cause of the fire to Allstate. Deputy Rawson informed Mr. Whedon that the windows and doors in the residence were closed. Rawson Depo. at 367–68. From this information Mr. Whedon determined that it was unlikely that an ember from the wildfire entered the structure. Deputy Rawson informed Mr. Whedon that the fire was burning heavily on the first floor, and testified that the roof and second floor were not burning. *Id.* at 368. The statements of Deputies Rawson and Soehnel were considered.

The Madans further contend that entries in a claims adjustor's report show that Mr. Whedon was reluctant to consider exculpatory evidence. Dave Garner investigated the claim on behalf of Allstate in the weeks following the fire. In an entry dated November 24, 1993, he inquired whether Mr. Whedon had sufficient evidence to prove the fire had been intentionally set. Garner Report; Exh. 2 to Carter Decl. Mr. Garner stated he did not believe arson could be proven on the evidence available at the time. Mr. Whedon responded that Allstate is his biggest client, he did not want to drag out the investigation, and he would "suggest to drop the case" if something did not develop soon. *Id.* at 25.

Mr. Garner's report identifies no exculpatory evidence. An investigator's statements in the early stages of an investigation, without more, do not prove the existence of a result-oriented investigation. Viewed in its entirety, the report shows that Allstate investigators considered the evidence and questioned their conclusions. The Madans have not shown that Allstate disregarded evidence supporting coverage under the policy.

### 2. *Witnesses to the Fire*

■■ An insurance company's duty to conduct a thorough investigation includes the duty to interview witnesses with significant information. *Downey Savings & Loan Ass'n v. Ohio Casualty Ins. Co.*, 189 Cal.App.3d 1072, 1084, 234 Cal.Rptr. 835, 840 (1987). The Madans assert that Allstate investigators did not interview fire department personnel stationed at Fire Station 66, located less than a mile from the premises. This was one of the first places the cause and

origin expert retained by the Madans went to obtain information. Lowe Decl., ¶ 6. As a result, Allstate did not consider the opinions of witnesses present at the premises on the morning of the fire.

Captain David Boucher is stationed at Fire Station 66. Between 8:15 and 8:30 a.m. on the morning of the fire, Mr. Madan arrived at the station and informed Captain Boucher that there was a fire at the insured premises. Captain Boucher recognized Mr. Madan and was familiar with the house. Boucher Decl., ¶ 8. Captain Boucher and Battalion Chief Joseph Graham drove to the Madan property. They observed that the grass around the house was smoldering. There was no visible sign of fire in the structure. *Id.* at ¶ 11. Thus, Mr. Madan left the premises prior to when the fire started. The wind on the morning of the fire could have carried embers from fires burning north of the premises and started the fire on the Madans' property. Captain Boucher further asserts that the residence burned in a manner consistent with a fire caused by the Altadena wildfire. *Id.* at paras. 13–17.

While Captain Boucher's opinions support Allstate's liability under the policy, they do not prove Allstate acted in bad faith. Mr. Madan stated under oath that upon leaving the premises on the morning of the fire he went directly to a family friend's home to be with his family. Mr. Madan EUO at 132. He did not inform Allstate that he went to the fire station or spoke with Captain Boucher. The Madans did not inform Allstate that Captain Boucher could provide information relevant to the investigation until December 13, 1994. White Decl., ¶ 4. The Madans spoke with Captain Boucher prior to February 4, 1994, more than three months before the Madans completed their examinations under oath and five months prior to when Allstate filed the instant action. The failure to disclose Captain Boucher as a witness does not entitle the Madans to claim bad faith because Allstate did not interview him. There is no evidence that Allstate knew Captain Boucher could provide relevant testimony.

### 3. *Attempt to Bias Witnesses*

The Madans contend that Allstate investigators attempted to bias witnesses. Allstate investigators interviewed the Madans' neighbors including Neal Fialkow and Conrad Zinsmaier. Mr. Zinsmaier was a tenant who lived with his family on the premises. The neighbors were informed that Allstate had reason to believe the fire on the premises had been intentionally set. Fialkow Decl. ¶ 9; Zinsmaier Decl. ¶ 12. Further, Joseph Bramblett is the Truesdail Laboratories chemist who tested fire debris samples recovered from the premises. He testified that Allstate's investigator informed him that the Madans had earthquake damage to their home, and that this was a motive to commit arson. Bramblett Depo. at 69–70.

Neither Mr. Fialkow nor Mr. Zinsmaier has experience in determining the cause or origin of fires. Mr. Zinsmaier left the area prior to when the Madans' residence caught fire. There is no evidence that the opinions of these witness would be material to the investigation. The statement to Mr. Bramblett did not affect the analysis performed by Truesdail Laboratories. The Madans have not shown that statements to witnesses affected the results or integrity of the investigation.

Allstate does not dispute the existence of a triable issue of fact as to whether the fire that burned the insured premises was intentionally set. However, Allstate's liability under the policy is not the subject of the instant motion. The Madans have not shown that Allstate conducted the investigation in bad faith. Accordingly, summary judgment is hereby granted in favor of Allstate on the bad faith claim. For the same reasons, punitive damages are not recoverable. *Franceschi*, 852 F.2d at 1220.

### E. *Intentional Infliction of Emotional Distress Claim*

In order to establish a claim for intentional infliction of emotional distress, the plaintiff must show (1) outrageous conduct by the defendant; (2) intent, or the defendant's reckless disregard of the probability of causing emotional distress; (3) severe or extreme emotional distress suffered

by the plaintiff; and (4) emotional distress caused by defendant's outrageous conduct. *Othman,* 759 F.2d at 1468 (quoting *Fletcher v. Western National Life Ins. Co.,* 10 Cal. App.3d 376, 394, 89 Cal.Rptr. 78, 88 (1970)).

The conduct by the defendant must be so extreme as to exceed all bounds of that usually tolerated in a civilized community to satisfy the first element of the claim. *Othman,* 759 F.2d at 1468. In the insurance context, the insurer's bad faith is not the kind of conduct that satisfies a claim for intentional infliction of emotional distress. *Beckham v. Safeco Insurance Co. of America,* 691 F.2d 898, 904 (9th Cir.1982). The insurer's state of mind in denying a claim or acting in bad faith is irrelevant in determining whether the conduct was outrageous. *Id.*

The Madans have not shown that Allstate acted outrageously in investigating the Madans' coverage claim. Allstate interviewed neighbors and inquired whether the Madans had a motive to set the fire. It was not outrageous conduct for Allstate investigators to state that they were investigating whether the fire had been intentionally set.

Allstate provided a copy of Whedon's report and a videotape of the premises during the fire to the District Attorney's office. Cabral Decl., paras. 3–4. The Deputy District Attorney who reviewed the evidence concluded that there was insufficient evidence to file criminal charges. The presentation of evidence to law enforcement officials is not unusual in arson investigations. It does not constitute outrageous conduct.

It can not be considered outrageous for Allstate to investigate whether the fire that burned the insured premises was intentionally set. Nor was it outrageous conduct to withhold information learned in the course of the investigation. Although Allstate's investigation and a criminal investigation by the District Attorney's office may have caused the Madans stress and anxiety, Shobhana Madan Decl., paras. 26–28, Allstate's conduct was not so extreme as to exceed the bounds normally tolerated in a civilized society.

The Madans contend that *Green v. State Farm Fire and Casualty Co.*, 667 F.2d 22, 24 (9th Cir.1982) supports their claim for intentional infliction of emotional distress. In *Green,* the insurer assured the plaintiff that

his sworn statement would be used for the purpose of determining coverage only. The insurer provided the information to the state police and used the information without the plaintiff's permission in an unrelated action. When state police determined that there was insufficient evidence to charge the plaintiff with arson, the insurance adjuster informed the plaintiff that if he pursued the claim the insurer would have him so charged. *Id.* at 23. The court applied Oregon law and found that the insurance company's behavior was so extreme and outrageous that the jury was justified in finding the insurer liable for the tort of outrageous conduct. *Id.* at 24.

Allstate has not used information gathered in the investigation against the Madans in other actions. The District Attorney's office determined there was insufficient evidence to prosecute the Madans for arson. There is no evidence that Allstate thereafter threatened criminal prosecution or attempted to influence the District Attorney's office to pursue the investigation. The Madans have presented no evidence that Allstate has used information discovered in the investigation for purposes other than to determine its liability under the policy. The facts in *Green* are distinguishable from the case at bar.

Accordingly, the Court hereby grants summary judgment in favor of Allstate on the claim for intentional infliction of emotional distress.

### CONCLUSION

Allstate has shown that a genuine issue as to liability under the policy exists. Thus, it did not act unreasonably in seeking declaratory relief. Nor did Allstate conduct its investigation in bad faith. It did not ignore exculpatory evidence or attempt to bias witnesses. In investigating the claim, Allstate did not act in an outrageous manner. Accordingly, the Court hereby grants summary judgment on behalf of Allstate on the counterclaims for breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress.

IT IS SO ORDERED.