Lois **ADAMS**, et al., Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY,**
and Does 1 through 10,
Defendants.

No. CV 01–4548 GAF.

United States District Court,
C.D. California.

Feb. 19, 2002.

Kurt E. Kananen, Brian S. Kabateck, Jerilyn Jacobs, Paul D. Stevens, Quisenberry & Kabateck, Los Angeles, CA, for plaintiffs.

Peter H. Klee, Nathan S. Arrington, Jeffrey V. Commisso, Luce Forward Hamilton & Scripps, San Diego, CA, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE HOGAN CLAIM

FEESS, District Judge.

## I.

## INTRODUCTION

In this case, thirty-five homeowners near Lake Hemet, California filed suit against Defendants Allstate Insurance Company ("Allstate"), Allstate Insurance Group and Allstate Personal & Casualty Company,[1] alleging breach of contract, tor-

1. The Court's July 23, 2001 Order dismissed without prejudice both Allstate Insurance Group and Allstate Personal & Casualty Com-

tious breach of the implied covenant of good faith and fair dealing and unfair business practices. The action, originally filed in state court and removed to this Court on diversity grounds, followed from Allstate's denial of property damage claims submitted by Plaintiffs under a "Deluxe Allstate Homeowner's Policy."

The present motion focuses on the insurance claim of these two Plaintiffs, the Hogans. According to these Plaintiffs, the damage to their home arose out of the Metropolitan Water District's ("Metropolitan") construction of the Eastside Reservoir in the vicinity of their home, which included repeated blasting over a period of three or more years in the course of construction of a dam for the Eastside Reservoir project. Allstate denied Plaintiffs' claim, stating the blasting was not the cause of the damage and, in any event, the type of damage allegedly incurred fell outside the scope of the homeowner's policy held by the Hogans.

Allstate now brings this Motion for Partial Summary Judgment solely on claims for Breach of the Implied Covenant of Good Faith and Fair Dealing ("insurance bad faith") and for related punitive damages. Allstate contends it is entitled to summary judgment on these causes of action because it did not act unreasonably in denying Plaintiffs' property damage claim. Rather, Allstate asserts it acted in good faith by relying on an independent expert investigations, which resulted in a genuine dispute over coverage liability for the property damage claim now at issue. Thus, Allstate argues that under the "genuine dispute" doctrine, this Court can conclude its actions in denying the Hogan claim was not unreasonable as a matter of law.

Plaintiffs argue that genuine issues of material fact remain as to the reasonableness of Allstate's actions in denying their claim, and assert that summary judgment should be denied. Plaintiffs contend that Allstate engaged in a pattern and practice of denying all property damage claims related to the Eastside Reservoir project by misrepresenting the nature of the damage suffered by their insured.

After reviewing the moving, opposition and reply papers, the voluminous exhibits submitted by both parties and the argument of counsel, the Court concludes Allstate's denial of the Hogan property claim was based on an independent engineering firm investigation that established a genuine dispute as to coverage liability. Because Plaintiffs have failed to establish any genuine issue of material fact regarding the legitimacy of the investigation, the Court concludes as a matter of law that the "genuine dispute" doctrine precludes a finding of bad faith. Further, because the Court adjudicates the bad faith claim in Defendant's favor, the claim for punitive damages for insurance bad faith also fails. Accordingly, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment.

## II.

### FACTUAL BACKGROUND

The Court finds the following facts are undisputed or sufficiently uncontroverted:

---

pany from this action, explaining it was not convinced either entity, should their existence be proven, had any role in the case. In addition, the Court has issued an order to show cause questioning the joinder of plaintiffs in this case. However, having already heard argument on this motion, and considered it on the merits, the Court will not defer its ruling.

## A. THE HOGAN PLAINTIFFS

Plaintiffs Gilbert and Paula Hogan purchased a home in Hemet, California in 1995, and insured it under a homeowner's policy issued by Defendant Allstate. (SUF ¶¶ 1 and 14). Coverage under the policy includes property damage arising from "sudden and accidental direct physical loss," subject to certain limitations and exclusions. (SUF ¶ 2). These exceptions include damage caused by any of the following: earth movement; wear and tear, "settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings," and loss to covered property where there are "two or more causes of loss to the covered property[,] and the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover,** items 1 through 22." (Notice of Lodgment ("NOL") Hogan Ex. 15 at 199–201) (emphasis in original).

On May 19, 2000, Plaintiffs submitted a claim to Allstate under their policy, asserting "[t]he cement, stucco and drywall surfaces at the insured property has generally suffered cosmetic to structural damage," as a result of "the continuous and on going construction and blasting activities at the Eastside ... Reservoir Project being conducted by the Metropolitan Water District." (SUF ¶ 3; NOL Hogan Ex. 2).[2] In their Sworn Statement in Preliminary Proof of Loss, the Hogans state they believe the blasting began in May 1996. (NOL Hogan Ex. 8). The damage referenced in both ALG's original claim letter and the Proof of Loss Statement, which includes cracks in both the interior and exterior walls, the driveway and other cement areas, is similar in nature to the property damage reported by the other 33

named Plaintiffs in this action. (SUF ¶ 11).

## B. ALLSTATE'S INVESTIGATION AND DENIAL OF THE HOGAN CLAIM

In May 2000, Allstate assigned the Hogan property damage claim to Neal Morgan, a claims adjuster responsible for handling the investigation, adjustment and payment of property and casualty claims made under Allstate policies. (SUF ¶ 19; Morgan Decl. ¶¶ 1 and 4). All of Allstate's Eastside Reservoir claims were assigned to Morgan and his supervisor, Dick Ray, and all were subsequently denied. (SUF ¶ 76; Jacobs Decl.Ex. 8 at 74).

On May 24, 2000, Allstate retained the civil engineering firm Earthquake Engineering, Inc. ("EEI") to inspect the Hogan property. (SUF ¶ 4). In the course of Morgan's handling of this claim, he did not personally visit the Hogan property, nor did he hire a seismologist to investigate it, (SUF ¶¶ 30 and 33).

The President of EEI, Eugene Gershunov, personally inspected the Hogan property on June 26, 2000. (SUF ¶ 5; NOL Hogan Ex. 13 at 2). Mr. Hogan and an ALG representative accompanied Gershunov on his inspection, at which time Mr. Hogan expressed his opinion that Metropolitan's blasting caused the damage. (NOL Hogan Ex. 13 at 2).

In the course of his investigation, Gershunov also compiled information regarding the construction activities at the Eastside Reservoir Project. His sources of information included telephone conferences with one or more representatives from each of the following entities: the City of Hemet; the Eastside Reservoir

---

**2.** Stephen End, a representative of the public insurance adjuster Advantage Loss Group ("ALG"), submitted the Allstate claim on behalf of the Hogan Plaintiffs, after the homeowners retained ALG to assist them in han-

dling their claim. Thus, the Defendant refers to the ALG claim as one actually made by the homeowners themselves. (Mot. at 2, n. 1) (*citing* NOL Hogan Ex. 2).

Project; Metropolitan's Office of General Counsel; an engineer firm retained by Metropolitan; and Caltech. (SUF ¶¶ 47, 50–55; NOL Hogan Ex.13 at 8).

Gershunov submitted his report to Allstate on July 5, 2000, in which he summarized his investigation, addressed all 34 of the property damage items identified by Mr. Hogan, attached 92 photographs of the damage taken during the on-site visit, and concluded the "property could not and did not sustain any damage as a result of blasting." (SUF ¶ 5; NOL Hogan Ex. 13 at 2). According to Gershunov's calculation, the Hogan property is located between one and six miles east of the reservoir project site in question, which encompasses the east dam, a reservoir and a quartz quarry. (SUF ¶ 15; Jacobs Decl. Ex. 1 at 99–100; NOL Hogan Ex. 13 at 9). In his report, Gershunov states the majority of the blasting took place at the quartz quarry near the west dam, situated at the far west side of the project site. (NOL Hogan Ex. 13 at 9). Also according to Gershunov, approximately 1,410 blasting events took place between January 19, 1995 and October 6, 1999. (*Id.* at 10). The blastings ranged in magnitude from less than 1.0 to 3.4 on the Richter scale, with most falling in the less than 1.0 and up to 2.0 range. (*Id.*)

Gershunov's report attributed the majority of the Hogan property damage to imperfections resulting from such causes as the manner and materials used in the home's original construction, and environmental factors such as temperature and moisture. (NOL Hogan Ex. 13 at 23).[3] Gershunov noted "[i]t would be unrealistic to expect to have a perfect property in 10 years after its marginal original construction." (*Id.*)

In a letter dated July 12, 2000 and addressed to Mr. End, the Hogans' ALG adjuster, Allstate denied the property damage claim, explaining the decision was based on information provided by ALG and EEI's engineering analysis. (SUF ¶ 6; NOL Hogan Ex. 14 at 1). Morgan advised End that EEI's report concluded the blasting was not the cause of the reported damages, rather, the damage was the result of "occurrences not covered, or excluded by our insured's policy." (*Id.*)

## C. PLAINTIFFS SUE ALLSTATE

On December 4, 2000, thirty-five Hemet homeowners, including the Hogan Plaintiffs, filed suit against Allstate in state court, claiming breach of contract, insurance bad faith and unfair business practices in violation of California law. The First Amended Complaint ("FAC") alleges similar causes of action against the Defendant by each homeowner, based upon approximately 30 allegedly similar property damage claims submitted to Allstate. (Amend.Compl.¶ 45). All Plaintiffs contend the blasting that occurred in the course of Metropolitan's construction of the Eastside Reservoir caused their identified property damage. (Amend. Compl.¶¶ 43–46). All Plaintiffs further assert Allstate's conduct in denying their claims was part of an "overall scheme to reduce the costs of legitimate insurance claims which ha[ve] been instituted against all similarly situated plaintiffs," rising to the level of an "illegal pattern and practice implemented against all of its insureds." (Amend.Compl.¶¶ 302–03). Thus, the Hogan Plaintiffs seek recovery for both compensatory and punitive damages.

---

**3.** In addition to general comments about predicted sources of damage, the report also contained specific explanations of the cause of each identified item of damage; explanations that accounted for approximately 11 of the 24 pages of the report. (NOL Hogan Ex. 13 at 13–24).

The case moved forward in state court for some time. When non-diverse defendants were dismissed, however, Allstate removed the action to this Court on the basis of diversity of citizenship. On November 13, 2001, Allstate filed a Motion for Partial Summary Judgment against the Hogan Plaintiffs, seeking judgment in its favor on the FAC's Twenty Second Cause of Action (insurance bad faith) and the related claim for punitive damages. Plaintiffs oppose the motion.

## III.

## ANALYSIS

### A. *THE LEGAL STANDARD UNDER RULE 56*

The Federal Rules of Civil Procedure provide that summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that a genuine issue remains for trial. *Id; see also* Fed.R.Civ.P. 56(e).

### B. *THE LEGAL STANDARD UNDER RULE 56(F)*

Pursuant to Rule 56(f), Plaintiffs ask the Court either to defer consideration of the present motion or to deny the motion, because Plaintiffs need additional discovery to respond to Defendant's arguments. Having reviewed the declarations submitted in support of what the Court construes as a Rule 56(f) motion, the Court finds that Plaintiffs have not made the showing necessary to obtain the requested relief.

Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

▮ Compliance with Rule 56(f) requires more than a perfunctory assertion that the party cannot respond because it needs to conduct discovery. In that regard, references in memoranda and declarations positing a need for discovery do not constitute a proper motion under Rule 56(f). Rather, the Rule requires affidavits setting forth with particularity: (1) why the party opposing summary judgment cannot respond; (2) the particular facts that the party reasonably expects to obtain in further discovery; and (3) how the information reasonably expected from its proposed discovery requests could be expected to create a genuine issue of material fact that would defeat the summary judgment motion. *In re Silicon Graphics Litigation,* 183 F.3d 970, 989 (9th Cir. 1999); *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir. 1986). Failure to comply with these requirements establishes a proper basis for denying the Rule 56(f) motion and proceeding to resolve the motion for summary judgment. *Brae Transp.,* 790 F.2d at 1443. Moreover, even where these prerequisites are met, a court may refuse to continue hearing a summary judgment motion where a party has had the opportunity to conduct discovery in a diligent fashion, but failed to do so. *See, e.g., Stitt v. Williams,* 919 F.2d 516, 526 (9th Cir.1990).

■ Here, Plaintiffs fail to satisfy the standard under Rule 56(f). The Plaintiffs merely reference the need for additional discovery in their opposition papers and supporting declarations, and fail to clarify whether the relief requested is a refusal by this Court from considering Defendant's motions, or merely an order continuing consideration of the motions to a later date. But whatever relief is being sought, the Court concludes neither action is appropriate under the present circumstances.

The declaration offered by Jacobs in opposition to Defendant's motion does not outline with any specificity what facts Plaintiffs expect to uncover through discovery. With respect to the Hogan claim, Jacobs anticipates receiving the Allstate claims handling manuals, yet fails to identify what triable issues might arise from a review of the manuals once received. (*See* Jacobs Decl. ¶ 6). Moreover, the fact that Plaintiffs present a detailed and thorough opposition to the present motion belies the assertion that they cannot defend against it. Accordingly, the Court **DENIES** Plaintiffs' Rule 56(f) request, and proceeds to consider the merits of Defendant's motion.

### C. INSURANCE BAD FAITH CLAIMS

■ Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). A cause of action for breach of the implied covenant is characterized as insurance bad faith, for which a plaintiff may recover tort damages. Success under the claim requires a showing that the insurer erroneously failed to pay benefits under an insurance policy, and the failure to do so was without proper cause. In short, the "ultimate test of bad faith liability in the first party cases is whether the refusal to pay policy benefits ... was unreasonable," and not as a result of mere negligence or bad judgment. *Chateau Chamberay Home-*

*owners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 346, 108 Cal.Rptr.2d 776 (2001) (*citing Opsal v. United Servs. Auto Ass'n*, 2 Cal.App.4th 1197, 1205, 10 Cal.Rptr.2d 352 (1991)); *see also Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001). When evaluating the reasonableness of an insurer's claim denial, the company's actions and decisions are to be considered at the time they were made, not with the benefit of hindsight. *Chateau*, 90 Cal.App.4th at 347, 108 Cal. Rptr.2d 776 (citation omitted) (discussing "no hindsight" principle); *see also Rigas v. Allstate Ins. Co.*, No. CV–97–31919, 1998 WL 422671, at * 2 (C.D.Cal. April 16, 1998) (*citing Austero v. National Cas. Co.*, 84 Cal.App.3d 1, 32, 148 Cal.Rptr. 653 (1978)).

■ While the question of whether an insurer has acted in bad faith is generally one of fact, where there is a genuine issue of an insurer's liability under a policy, a court can conclude that an insurer's actions in denying the claim were not unreasonable as a matter of law. *Chateau*, 90 Cal.App.4th at 347, 108 Cal.Rptr.2d 776. Thus, "[u]nder California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage." *Guebara*, 237 F.3d at 992.

### D. THE "GENUINE DISPUTE" DOCTRINE

The "genuine dispute" doctrine is well settled and often used in insurance bad faith actions brought under California law. The Ninth Circuit has frequently affirmed summary judgment orders in bad faith claims where the trial court's ruling was based on a genuine dispute over insurance coverage. *Guebara*, 237 F.3d at 993–94. While the California Supreme Court has yet to define the limits of this doctrine, it continues to be applied, on a case-by-case basis, to cases involving both factual and legal coverage disputes. *See id.* (citing as

instructive the California appellate court decision *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1292, 97 Cal.Rptr.2d 386 (2000)); *see also Chateau*, 90 Cal.App.4th at 348, 108 Cal.Rptr.2d 776.

██ In *Guebara*, where the insured and insurer became embroiled in a dispute over whether certain items were in fact destroyed in a fire, the insurance company ultimately denied coverage on the ground that the claimant had submitted a fraudulent claim, and that her dwelling had been destroyed in an arson fire. After the insurer denied the claim, the insured brought suit for breach of contract and insurance bad faith. *Guebara*, 237 F.3d at 990. The court concluded the content claim dispute was a genuine one because when denying the claim, the insurer relied on the opinions of independent experts and the inconsistent explanations offered by the insured relating to property allegedly damaged by the fire. *Id.* at 995. Affirming the trial court's entry of summary judgment in the insurer's favor on the bad faith claim, the Ninth Circuit noted that the existence of a "genuine dispute" must be determined case-by-case, and the reliance on "[e]xpert testimony does not automatically insulate insurers from bad faith claims based on biased investigations." *Id.* at 996. Thus, a trial court should consider whether:

> (1) the insurer is guilty of misrepresenting the nature of the investigatory proceedings, . . . (2) the insurer's employees lie during the depositions or to the insured; (3) the insurer dishonestly selected its experts; (4) the insurer's experts were unreasonable; and (5) the insurer failed to conduct a thorough investigation.

*Id.* (internal citations omitted).

Similarly, in *Chateau*, the court agreed with a lower court's application of the "genuine dispute" doctrine where the coverage dispute between the insured and

insurer related to an adjustment of benefits paid under a policy. 90 Cal.App.4th at 349, 108 Cal.Rptr.2d 776. The court upheld the lower court's grant of the insurer's motion for partial summary judgment on the insured's claim of bad faith, concluding the insured failed to raise a triable issue of fact over alleged bad faith actions by the insurer in adjusting the property damage claim. *Id.; see also Benton v. Allstate Ins. Co.*, No. CV–00–00499, 2001 WL 210685, at *7 (C.D.Cal. Feb.26, 2001) (concluding the insured failed to raise a triable issue of fact as to the insurer's alleged bad faith claim denial); *Phelps v. Provident Life & Accident Ins. Co.*, 60 F.Supp.2d 1014, 1024 (C.D.Cal.1999) (same); *Allstate Ins. Co. v. Madan*, 889 F.Supp. 374, 382 (C.D.Cal.1995) (same).

### E. THE HOGAN BAD FAITH INSURANCE CLAIM

#### 1. Allstate's Legitimate Basis for Disputing Coverage Liability

██ The Defendant presents credible evidence leading this Court to conclude there was a legitimate reason to question coverage liability for the Hogan property damage claim. In reaching this decision, the Court finds unpersuasive Plaintiffs' attempt to distinguish the facts of this case from the controlling authority by counting the number of experts involved. The Court concludes that under existing law, a single, thorough report by an independent expert is sufficient, all other things being equal, to support application of the "genuine dispute" doctrine. As noted above, this Court must consider each bad faith claim on a case-by-case basis, and consider the record as a whole in concluding whether an insurer's claim denial was reasonable. *See Chateau*, 90 Cal.App.4th at 348 and 350, 108 Cal.Rptr.2d 776.

Here, Allstate retained EEI, an independent engineering firm with experience in the area of structural damage. EEI

performed a detailed examination of the alleged property damage, reviewed seismic and other engineering data pertaining to the blasting, and other relevant information in reaching its conclusion. The report persuasively concluded that Plaintiff's alleged property damage did not result from Metropolitan's blasting activities, but rather from settling, thermal expansion and contraction and other non-covered causes. Thus, the EEI report, on which Allstate reasonably relied, created a genuine dispute over coverage. Accordingly, the Court concludes application of the "genuine dispute" doctrine is appropriate in the instant claim.

### 2. The Hogans Fail to Raise Triable Issues of Fact as to Allstate's Alleged Bad Faith Actions

Plaintiffs allege that triable issues of fact remain as to the reasonableness of the Defendant's actions surrounding the investigation and denial of their property damage claim. After reviewing the admissible and credible evidence submitted by both parties, however, the Court concludes Plaintiffs fail to raise any triable issues of fact as to the alleged bad faith actions of Allstate.

### a. EEI's Investigation of the Hogan Claim

Plaintiffs argue evidence presented raises a triable issue of fact as to the reasonableness of EEI's investigation of the Hogan property claim, including Gershunov's supplemental report and the three other engineering reports that concluded Metropolitan's blasting may have caused other property damage in the Hemet area. The Court disagrees.

The record contains no evidence that Gershunov relied on faulty reasoning, ignored relevant data, or used improper data in conducting his investigation and compiling his report. Rather, the Court finds the contrary to be true, as the evidence establishes that Gershunov relied on correct scientific data and proper reasoning that contemplated a range of possibilities which he described in a detailed report submitted to Allstate.

■ Plaintiffs also assert that Gershunov's supplemental report calls into question the reasonableness of his initial investigation, but the argument is not persuasive. Gershunov states in his supplemental report that unknown variables could change some of his conclusions regarding the blasting effects; based on the information actually known to him, however, Gershunov never changed his overall position on the source of the Hogans' property damage. (*See* Jacobs Decl.Ex. 3 at 3–5). Moreover, the hindsight rule clearly bars this Court's consideration of information not known to the insurer at the time of the claim denial. *See Chateau*, 90 Cal.App.4th at 347, 108 Cal.Rptr.2d 776. Plaintiffs have not shown that Allstate was aware of the information in Gershunov's supplemental report when the insurance company denied the Plaintiffs' claim.

■ Furthermore, Plaintiffs claim three other engineering reports existed at the time of Gershunov's investigation, which addressed the source of property damage at other Lake Hemet homes, and supposedly reached conclusions that conflicted with those offered in Gershunov's report. (*See* Jacobs Decl.Exs. 10–12). However, the Court also finds unpersuasive Plaintiffs' assertion that the findings contained in these three other reports raise a triable issue of fact as to the reasonableness of EEI's report.

At the outset, the Court agrees with the Defendant's assertion that the reports are not admissible. Plaintiffs fail to properly authenticate the exhibits, and unauthenticated documents should not be considered in a motion for summary judgment. *See*

*Hal Roach Studios v. Richard Feiner and Co.,* 896 F.2d 1542, 1550 (9th Cir.1989). The Court notes, however, that even if the reports were properly authenticated and made a part of the record in this action, their existence and content would not change the Court's conclusion on this issue.

The reports do not address the property at issue in the Hogan claim; rather, they relate to different properties in the Hemet area whose homeowners also submitted claims to their insurers. At least one of these other reports expressly limits the findings made to the specific areas and features described within the report in connection with a "visual observation of the *specified* principal residence," and notes use of the report is for the "*sole* purpose of the client." (Jacobs Decl.Ex. 11 at 9) (emphasis added). Furthermore, the Court fails to see how the findings made in these three reports are in direct contravention, or even inconsistent with, those made by Gershunov because no report conclusively attributes all property damage to the blastings. For example, one report concludes the proximate cause of the property damage "appears to have been impacted by seismic forces including earthquakes *and* blasting operations associated with the Eastside Reservoir Project construction." (Jacobs Decl.Ex. 10 at 4) (emphasis added) (identifying multiple recent earthquakes that may have impacted the site, including the 7.0 magnitude Hector Mine Quake). The other two reports are similarly inconclusive.[4] Finally, it is clear from these reports that the other houses were located at different distances from the blasting site, and that the alleged damage to those structures may have occurred at different times than the alleged damage to the Plaintiffs' residence. That these reports may have reached a different conclusion than Gershunov serves at most to establish that a genuine dispute exists, even among experts, regarding the cause of property damage suffered by homes in the vicinity of Metropolitan's blasting operations.

The Plaintiffs submit no opinion or report by an expert that alleges the nature and quality of EEI's investigation was somehow incorrect or unreasonable. More importantly, Plaintiffs fail to present the opinion or report of any expert that even specifically addresses the Hogan property. The only opinions Plaintiffs offer regarding the source of their property damage are those of an ALG representative and of the homeowners themselves. However, they provide no cite to authority that holds an insurer has a duty to follow the conclusions of a lay homeowner over those of an independent expert investigator. Accordingly, the Court finds Plaintiffs fail to raise a triable issue of fact as to the reasonableness of EEI's investigation and report.

**b. Allstate's Reliance on the EEI Report**

Plaintiffs argue Allstate's reliance on the EEI report was unreasonable because of Gershunov's alleged predisposition and bias in favor of the insurer. They also question whether Allstate did in fact rely on Gershunov's findings when denying the claims. The Court concludes Plaintiffs

---

4. For example, the second report concludes that cracks in one homeowner's driveway resulted from "a *combination* of typical shrinkage and the repetitive blasting operations which *may* have aggravated the existing cracks, causing cracks to widen or grow larger." (Jacobs Decl.Ex. 11 at 4) (emphasis added). And the third report concludes that "the

recent blasting from [Metropolitan's] construction ... *likely* caused some limited vibration felt at this site.... Because the structure is very flexible, any vibrations from blasting would likely have been felt by the occupants but would not have affected the connections of the structure." (Jacobs Decl.Ex. 12 at 1) (emphasis added).

present no evidence to support these contentions; rather, credible evidence exists that establishes just the contrary.

As to the reasonableness of Allstate's reliance, Gershunov's report and deposition establish the expert was independent of Allstate in his investigation of the Hogan claim. (*See* Jacobs Decl.Exs. 1 and 2). With respect to Allstate's actual reliance on Gershunov and EEI report, Morgan contends his sole purpose in hiring EEI was to determine the source of the identified property damage; a determination necessary to evaluate whether the source fell within the policy's scope of coverage. (Jacobs Decl.Ex. 4 at 40–41). Moreover, Morgan also expressly referenced the report in both his claim diary and in the July 12, 2000 denial letter, and noted EEI's conclusion that the blasting was not a source of any identified damage. (NOL Hogan Exs. 1 and 14).

Therefore, the Court concludes Plaintiffs present no credible evidence in support of the contentions made here, and fail to raise any triable issues of fact as to the reasonableness of Defendant's reliance on the EEI report.

### c. Allstate's Investigation of the Hogan Claim

Plaintiffs also argue triable issues of fact remain regarding whether Allstate adequately and thoroughly investigated their claim, focusing primarily on Morgan's alleged failure to consider all possible reasons supporting claim coverage. The Court again disagrees.

Plaintiffs claim Morgan failed to consider all possible bases that might have supported coverage of their claim because he did not conduct a personal investigation of the claim, and instead assigned the entire responsibility to EEI. The Court fails to see how Allstate's decision to assign the claim investigation to an independent engineering company supports Plaintiffs' argu-

ment here. Morgan did not perform his own investigation because he is not qualified to do so. Instead, Morgan retained EEI, an independent and experienced engineering firm who could form expert opinions as to the source of the Hogans' property damage, which actually weighs in favor of a finding that Allstate acted reasonably in its investigation of the Hogan claim. Furthermore, the record establishes that Morgan personally reviewed and evaluated the information received from the Hogans and EEI prior to making any decision as to the legitimacy of the claim. (NOL Hogan Ex. 1).

In sum, the Court concludes the arguments and evidence offered by the Plaintiffs do not raise any triable issues of fact relating to the alleged bad faith actions of Allstate, making application of the "genuine dispute" doctrine appropriate under the present circumstances. Therefore, the Court holds Allstate's actions surrounding the investigation and denial of the Hogan claim were not unreasonable as a matter of law, and **GRANTS** Defendant's Motion for Summary Judgment with respect to the Hogan bad faith insurance claim.

### F. PUNITIVE DAMAGES IN INSURANCE ACTIONS

Defendants argue that regardless of how this Court rules on the bad faith claim, summary judgment on Plaintiffs' punitive damages claim is appropriate. Plaintiffs counter that the issue is one better left for the jury. However, because this Court determined the Defendant is entitled to summary judgment on Plaintiffs' bad faith claim, the insurer is also entitled to summary judgment in its favor on the related claim for punitive damages.

The California Civil Code provides, in pertinent part:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evi-

dence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal.Civ.Code § 3294(a); *see also Phelps v. Provident Life and Accident Ins. Co.,* 60 F.Supp.2d 1014, 1026 (C.D.Cal.1999) *(citing* Cal.Civ.Code §§ 3294(a) and 3194(c)).

 Before a plaintiff may ever recover under a claim for punitive damages, he or she must first establish by clear and convincing evidence that the defendant acted with malice, oppression or fraud. *Lunsford v. American Guarantee & Liability Ins. Co.,* 18 F.3d 653, 656 (9th Cir. 1994) (citation omitted); *see also Tomaselli v. Transamerica Ins. Co.,* 25 Cal. App.4th 1269, 1288, 31 Cal.Rptr.2d 433 (1994). This higher clear and convincing evidentiary standard applies at every stage of the litigation process, including summary adjudication. *See Basich v. Allstate Ins. Co.,* 87 Cal.App.4th 1112, 1121, 105 Cal.Rptr.2d 153 (2001). Thus, a plaintiff who is not able to survive summary judgment on an insurance bad faith claim, is also unable to survive summary judgment on a related claim for punitive damages. *Lunsford,* 18 F.3d at 656; *Madan,* 889 F.Supp. at 382.

Therefore, in light of this Court's holding that the Defendant is entitled to summary judgment of Plaintiffs' bad faith claim, it follows the Defendant is entitled to the same relief with respect to the related punitive damages claim. Accordingly, the Court **GRANTS** Defendant's motion as to Plaintiffs' claim for punitive damages.

## IV.

### CONCLUSION

For the reasons as set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to the bad faith and punitive damages claims alleged by the Hogan Plaintiffs.

IT IS SO ORDERED.